AO 91 (Rev. 11/11)  Criminal Complaint

DOA: 7/8/2025

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| United States of America,<br>　　　　Plaintiff<br><br>　　　v.<br><br>Blademir Angulo Audeves,<br>　　A#200975063<br>　　　　Defendant | Case No.<br><br>25-3297MJ |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT 1

**(Alien in Possession of a Firearm)**

On or about July 8, 2025, in Maricopa County, in the District of Arizona, the defendant, BLADEMIR ANGULO AUDEVES, knowing that he was an alien illegally and unlawfully present in the United States, did knowingly possess firearms and ammunition, to wit:

　　(1) Mossberg .22LR Rifle, Serial Number (S/N): EM13907346,

　　(2) Colt 1911 Government Model 45 ACP, S/N: FG65072,

　　(3) Colt Single Action Army 45, S/N: P70363,

all of which had previously been shipped or transported in interstate or foreign commerce.

In violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(8).

### COUNT 2

**(Harboring Illegal Aliens)**

Beginning on an unknown date and continuing through on or about July 8, 2025, in the District of Arizona and elsewhere, the defendant, BLADEMIR ANGULO AUDEVES, knowing and in reckless disregard of the fact that certain aliens, namely: Jesus Antonio Camacho Verdugo and Jose Daniel Vega Anaya, had come to, entered, and remained in the United States in violation of law, did knowingly conceal, harbor, and shield from detection such aliens in any place, including any building and any means of transportation.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(ii).

## COUNT 3

### (Improper Entry by Alien)

On or about August 26, 2021, at or near Nogales, Arizona, in the District of Arizona, BLADEMIR ANGULO AUDEVES, an alien, did knowingly and voluntarily enter the United States at a time and place other than as designated by Immigration Officers of the United States.

In violation of Title 8, United States Code, Section 1325(a)(1).

## COUNT 4

### (Pattern and Practice of Knowingly Employing Unauthorized Aliens)

Beginning on an unknown date, and continuing through on or around July 8, 2025, in the District of Arizona and elsewhere, the defendant, BLADEMIR ANGULO AUDEVES, engaged in a pattern and practice of hiring for employment and continuing to employ aliens, namely, German Audeves Quintero, Jose Daniel Vega Anaya, and Jesus Antonio Camacho Verdugo, in the United States, knowing the aliens were and had become unauthorized with respect to such employment.

In violation of Title 8, United States Code, Sections 1324a(a)(1), (a)(2) and (f)(1).

This criminal complaint is based on these facts:

See attached Statement of Probable Cause, incorporated by reference herein.

☒ Continued on the attached sheet.

AUTHORIZED BY: AUSA Addison B Owen, AUSA LeighAnn M. Thomas

*Digitally signed by ADDISON OWEN*
*Date: 2025.07.10 17:04:03 -07'00'*

DANIELLE M MAESE
*Digitally signed by DANIELLE M MAESE*
*Date: 2025.07.10 16:57:34 -07'00'*

*Complainant's signature*

Danielle Maese, HSI Special Agent

*Printed name and title*

Sworn to telephonically.

Date: July 10, 2025

*Judge's signature*

Michael T. Morrissey
United States Magistrate Judge

*Printed name and title*

City and state: Phoenix, Arizona

## STATEMENT OF PROBABLE CAUSE

I, Danielle Maese, a Special Agent with Homeland Security Investigations, being duly sworn, declare and state as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am currently employed as a Special Agent with the Homeland Security Investigations (HSI) in Nogales, Arizona and have been employed with the agency since August 2022. I am an investigator and law enforcement officer of the United States within the meaning of Title 18, United States Code, § 2301(7) and have Federal Arrest Authority via Title 19 United States Code, § 1989(a) and Title 8, Untied States Code, § 1357.

2. I attended and successfully completed training at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia. This training included both the Criminal Investigator Training Program and the HSI Special Agent Training. At FLETC, I was trained in, among other things, the investigation of human smuggling and immigration violations, narcotics trafficking, money laundering, financial fraud, trafficking of counterfeit goods, and other federal violations. Prior to employment with HSI, I worked as a United States Customs and Border Protection Officer in Nogales Arizona starting in August 2019. Based upon my training and experience with immigration law and immigration violation investigations I am familiar with the way in which human smuggling organization's function. Additionally, I am familiar with the means of communication used to coordinate human smuggling, travel, and payment associated with the process.

3. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. My responsibilities include, among other things, the investigation of unlawful employment of aliens

4. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing

probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

## PROBABLE CAUSE

5. Between March 2025 and July 2025, Homeland Security Investigations (HSI) agents have been conducting an investigation into Blademir ANGULO Audeves (ANGULO) and his business, Taqueria El Taco Loko LLC, due to suspected employment of unlawfully present aliens without employment authorization. Taqueria El Taco Loko operates a brick-and-mortar restaurant, Taqueria El Taco Loko, located on Indian School Road in Phoenix, Arizona (Restaurant), and at two mobile restaurants, a Taco Bus and a Taco Trailer. The Taco Trailer typically operates at 5501 W. Baseline Road, Laveen Village, Arizona, and the Taco Bus typically operates in Maricopa, Arizona. ANGULO and some of his employees, who are unlawfully present in the United States, reside in a house on 63rd Avenue in Laveen, Arizona (ANGULO's residence). His employees reside in recreational vehicles or trailers on the property.

6. ANGULO was born in Mexico. On or about April 15, 2011, ANGULO was encountered during routine jail checks at the West Valley Detention Center where ANGULO admitted to being a citizen and national of Mexico and entering the United States without being inspected, admitted, or paroled. On or about December 13, 2018, ANGULO was granted a voluntary departure. After court proceedings, appeals, and breached bonds, on or about May 26, 2021, ANGULO voluntarily departed the United States through Nogales, Arizona. There is no record of legal entry into the United States after ANGULO's voluntary departure on May 26, 2021. As a result, ANGULO is illegally present in the United States.

7. ANGULO is listed as the principal and statutory agent of Taqueria El Taco Loko LLC with ANGULO's Residence as the mailing address. Flor Ivet Vargas-Loya, ANGULO's wife, is also listed as a principal.

8. Between March 2025 and July 2025, agents conducted surveillance on ANGULO and his business, including surveillance at ANGULO's Residence, the brick-

and-mortar location, the Taco Trailer location on Baseline, the Taco Bus in Maricopa, and a residence on 16th Avenue in Phoenix that housed illegal aliens who were employees of the business. Agents identified at least twelve illegal aliens actively working for the business including, but not limited to:

    a. <u>Mireya GRANADOS-Aparicio</u>. GRANADOS-Aparicio is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States.

    b. <u>Pedro LLAMAS-Espinoza</u>. LLAMAS-Espinoza is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. LLAMAS-Espinoza has no prior removals or deportations from the United States.

    c. <u>Hector Armando MONZON-Verdugo</u>. MONZON-Verdugo is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. MONZON-Verdugo has no prior removals or deportations from the United States.

    d. <u>Eduardo Arturo OCHOA-Leyva</u>. OCHOA-Leyva is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. OCHOA-Leyva has no prior removals or deportations from the United States.

    e. <u>Leobardo CRUZ-Moreno</u>. CRUZ-Moreno is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. CRUZ-Moreno has no prior removals or deportations from the United States.

    f. <u>Jesus Antonio CAMACHO-Verdugo</u>. CAMACHO-Verdugo is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the

United States. CAMACHO-Verdugo has no prior removals or deportations from the United States.

g. <u>Andrinson MATOS</u>. MATOS is a citizen of Dominican Republic.

h. <u>Jose Daniel VEGA-Anaya</u>. VEGA-Anaya is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States.

i. <u>Jose Ignacio FLORES-Luna</u>. FLORES-Luna is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. FLORES-Luna has no prior removals or deportations from the United States.

j. <u>Christian Eduardo SAGASTE-Garcia</u>. SAGASTE-Garcia is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. On or about October 22, 2024, SAGASTE-Garcia was removed from the United States at or near Nogales, Arizona.

k. <u>Eleazar ESPINOZA-Zavala</u>. ESPINOZA-Zavala is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. ESPINOZA-Zavala was removed from the United States on or about August 28, 2007. ESPINOZA-Zavala was again removed from the United States on or about June 18, 2008. ESPINOZA-Zavala is currently on a 20- year ban from reentering the United States.

l. <u>Jose Luis AMBRIZ-Cortez</u>. AMBRIZ-Cortez is a citizen of Mexico and does not possess any valid immigration documents from the United States which would permit him to lawfully enter, pass through, stay, or be employed in the United States. On or about February 16, 2023, AMBRIZ-Cortez was removed from the United States at or near San Ysidro, California.

9. Specifically, surveillance conducted at the Restaurant on April 8, 2025, revealed SAGASTE-Garcia and LLAMAS-Espinoza were actively working at the

Restaurant. LLAMAS-Espinoza was again working at the Restaurant during surveillance conducted on May 1, May 20, and May 27, 2025. On May 7, 2025, surveillance revealed MATOS was working at the Restaurant.

10. Additionally, surveillance revealed that the Taco Bus and Taco Trailer left ANGULO's Residence to set up at their respective locations in Maricopa and in Laveen Village, and typically returned to ANGULO's Residence nightly. Specifically, surveillance conducted on May 1, 2025, revealed GRANADOS-Aparicio and MONZON-Verdugo were working on the Taco Trailer in Laveen Village. Surveillance conducted on May 7, 2025, revealed that ESPINOZA-Zavala and CRUZ-Moreno were working at the Taco Bus in Maricopa. On May 27, 2025, surveillance revealed MONZON-Verdugo and AMBRIZ-Cortez were working at the Taco Trailer in Laveen Village.

11. Agents also continued conducting surveillance on ANGULO's Residence where some of the previously identified illegal aliens' vehicles were parked on ANGULO's property including vehicles registered to MONZON-Verdugo, OCHOA-Leyva, and CAMACHO-Verdugo. Some of the previously identified illegal aliens were observed on ANGULO's Laveen property in a manner consistent with residing in recreational vehicles or trailers parked on ANGULO's property, including SAGASTE-Garcia and OCHOA-Levya. Both of these illegal aliens also used ANGULO's Residence to send money to Mexico. As the investigation progressed, agents determined that some of the identified illegal aliens who had previously resided on ANGULO's property had moved to a new residence on 16th Avenue in Phoenix. Surveillance conducted at the 16th Avenue location on May 27 and 28, 2025, revealed the presence of vehicles registered to illegal aliens including ESPINOZA-Zavala, MONZON-Verdugo, CAMACHO-Verdugo, and FLORES-Luna. According to surveillance on June 2 and 8, 2025, revealed the presence of illegal alien CRUZ-Moreno and FLORES-Luna at the 16th Avenue location.

12. ANGULO maintained multiple social media accounts including Tik-Tok, Facebook and YouTube. ANGULO has both a personal account and accounts for Taqueria El Taco Loko. ANGULO's accounts frequently posted videos containing previously

identified illegal aliens including SAGASTE-Garcia, ESPINOZA-Zavala, LLAMAS-Espinoza, and GRANADOS-Aparicio working for Taqueria El Taco Loko.

### July 8, 2025, Execution of Federal Search Warrants

13. On July 8, 2025, at approximately 1700 hours, law enforcement executed federal search warrants, authorized by U.S. Magistrate Judge Alison S. Bachus at ANGULO's Residence, the Restaurant, the Taco Bus, and Taco Trailer and the 16th Avenue residence.

A. *ANGULO's Residence*

14. Agents located ANGULO, VARGAS-Loya, and Eduardo OCHOA-Leyva at ANGULO's Residence. Specifically, ANGULO and VARGAS-Loya exited the primary residence while OCHOA-Leyva was located inside a trailer located on ANGULO's property. The Taco Bus was also located on ANGULO's property.

15. At ANGULO's Residence, agents located three firearms and ammunition in ANGULO and VARGAS-Loya's master bedroom in a closet. Specifically, inside the master bedroom closet, agents located (1) Mossberg .22LR Rifle, Serial Number (S/N): EM13907346, (2) Colt 1911 Government Model 45 ACP, S/N: FG65072, and (3) Colt Single Action Army 45, S/N: P70363.

16. Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Nexus Expert Special Agent James Cauble made a preliminary determination, based on the make, model and photographs of the three firearms, that all three firearms had travelled in interstate commerce.

B. *16th Avenue Residence*

17. MONZON-Verdugo, FLORES-Luna, VEGA-Anaya, CAMACHO-Verdugo, and German AUDEVES Quintero (ANGULO's brother) were located at the 16th Avenue property. All were determined to be citizens of Mexico without any Immigration documents allowing them to enter, pass through, remain or be employed in the United States legally.

C. *Taco Truck/Trailer on Baseline in Laveen Village*

18. SAGASTE-Garcia and AMBRIZ-Cortes were located at the Taco Trailer on Baseline in Laveen Village actively working on the Taco Trailer. Both were determined to be citizens of Mexico without any Immigration documents allowing them to enter, pass through, remain or be employed in the United States legally.

D. *Restaurant on Indian School*

19. LLAMAS-Espinoza and MATOS were located actively working at the restaurant. LLAMAS-Espinoza was determined to be a citizen of Mexico without any Immigration documents allowing him to enter, pass through, remain or be employed in the United States legally.

## ANGULO'S STATEMENT

20. On July 8, 2025, at approximately 1915 hours, agents conducted an audio recorded interview with ANGULO. ANGULO was provided his *Miranda* warnings in the Spanish language. ANGULO initially did not want to waive his rights and asked the agents for more explanation of what was happening. After further explanation of his *Miranda* rights, he chose to waive his rights and agreed to speak with agents without an attorney present. ANGULO was also read a consent form to search his cellphone in the Spanish language. ANGULO signed the consent to search his cellphone. ANGULO's interview alternates between English and Spanish. Below is a summary of his interview.

21. ANGULO stated that in 2017 he had a work permit to work in the United States. ANGULO stated that in 2021, he was advised by immigration officials to voluntarily return to Mexico, which he did, on or about May 26, 2021. ANGULO stated he left the United States and went back to Guasave, Sinaloa. ANGULO stated that he entered the United States from Mexico illegally on or about August 26, 2021, through Nogales, Arizona and that he knew his entry was illegal. ANGULO stated he walked through the desert from Mexico into the United States.

22. ANGULO stated that he started the Taco Loko business in 2017. ANGULO stated during Covid, he expanded the business to operate food trucks as well. ANGULO stated that approximately two years ago he moved his taco truck to the Baseline location,

that he would do $100,000 United States Dollars (USD) in business in a week. ANGULO identified multiple employees of his Taco Loko business including SAGASTE-Garcia, OCHOA-Levya, and LLAMAS-Espinoza (at the Restaurant location). ANGULO stated he grew up with OCHOA-Levya and knew him from Mexico and that he had been employed by ANGULO for approximately four years. ANGULO also stated MATOS also worked for him. ANGULO stated there were additional employees that worked for him, but he could not currently recall their names.

23. ANGULO explained that, while he initially did all the hiring, approximately two years ago he let each location do their own hiring. ANGULO explained that between the three locations (Restaurant, Taco Bus, and Taco Trailer), he had approximately 16 total employees. ANGULO stated in the past he had up to 29 employees.

24. ANGULO was then questioned as to what forms employees were required to fill out when trying to get hired. ANGULO stated he would provide personal information and something for their taxes. When questioned how the employees pay their taxes if they do not have Social Security Numbers (SSN), ANGULO stated that some do have SSNs and that only SSN employees were the ones on the payroll. ANGULO explained that his wife, VARGAS-Loya, his United States citizen son and daughter, and person identified only as "Taymo" were on the payroll. ANGULO stated that he pays employees one week in cash, and one week with checks. ANGULO stated VARGAS-Loya handled the accounting for the business.

25. ANGULO stated he was aware of his employees lived together in a house on 16th Avenue or Street, but did not know the exact address.

26. ANGULO stated that "Antonio" (CAMACHO) worked for ANGULO for a long time and was also from his birthplace, Guasave. ANGULO stated that "one guy brings the other one" explaining that he receives messages on Facebook or phone calls from people telling ANGULO that they have a friend that needs a job because they know ANGULO has a taco business. ANGULO stated he did not bring people from Mexico into the United States, but that he hired people that were already in the United States. ANGULO

stated he told some of these people that if they can come into the United States that ANGULO will give them a job at his business.

27. ANGULO stated that SAGASTE-Garcia and OCHOA-Levya live on ANGULO's property. ANGULO stated he charges them approximately $300 USD per month for rent. ANGULO stated MONZON-Verdugo also had lived on ANGULO's property and that ANGULO would charge him for bills.

28. ANGULO stated that he met ESPINOZA-Zavala who was living on the streets through a friend. ANGULO allowed ESPINOZA-Zavala to live on ANGULO's property for some time. ANGULO stated ESPINOZA-Zavala and CRUZ-Moreno worked for ANGULO but about a month ago they stopped coming to work and were employed elsewhere.

29. ANGULO stated the three firearms located in the master bedroom closet. ANGULO stated that they were gifts. ANGULO stated he had a .22 caliber rifle that was for coyotes, but that he has never used it. ANGULO stated the revolver was gifted to him for his birthday. ANGULO stated the third firearm was gifted to him approximately two years ago. ANGULO stated that he knew he was not allowed to have firearms.

30. ANGULO stated that he knew it was illegal to hire illegal aliens, but that he was not the only person employing illegal aliens. ANGULO stated he initially pays his employees approximately $15 USD per hour. ANGULO explained that OCHOA-Levya was the most senior employee and manager and received a salary of $1,000 USD per week. ANGULO also stated SAGASTE-Garcia was also a salaried employee.

31. ANGULO explained that there is a laptop computer that has all of the Taco Loko business records of payment to employees on it. ANGULO also explained that there is a WhatsApp group chat which was used to post employee schedules. ANGULO's stated that he would not charge the employees without SSN taxes.

32. ANGULO recalled a situation in which a female employee, one with legal status in the United States, quit and left the business and was unhappy. ANGULO could not recall her name. ANGULO stated that the former employee made a statement on

Facebook or to another employee that she was going to report him to immigration at some point. ANGULO stated that he was waiting for all of this to happen, meaning his arrest, for a long time.

33.  ANGULO confirmed that he publicly posts a lot of his daily life and his employees on Facebook.

34.  ANGULO was questioned about assigning or bringing anyone in the United States, specifically his employees that were currently in custody. ANGULO stated, "They can tell you that I may have given them a number of a friend in Mexico, but that's it." ANGULO was questioned if any of his employees paid him fees for coming into the United States and ANGULO denied that he was paid. ANGULO stated that he would occasionally lend people money after they arrived in the United States but that was it. ANGULO also stated he would help employees get cellphones activated through the Taco Loko business.

35.  Agents were conducting interviews of other Taco Loko employees following the execution of the search warrants. Based on information obtained during those interviews, at approximately 2315 hours, agents conducted a follow-up interview with ANGULO which was audio recorded. ANGULO was again asked if he paid for, arranged, or knew about any of his employees being smuggled into the United States. ANGULO again stated that he did now know anything about that and had no role in any of his employees entering the United States illegally.

### MATERIAL WITNESS STATEMENTS

A. *Jesus Antonio CAMACHO Verdugo (CAMACHO)*

36.  On July 8, 2025, at approximately 2048 hours, agents conducted an audio recorded interview with Jesus Antonio CAMACHO Verdugo (CAMACHO). CAMACHO was provided his *Miranda* warnings in the Spanish language. CAMACHO chose to waive his rights and agreed to speak with agents without an attorney present. Below is a summary of his interview.

37.  CAMACHO was determined to be a citizen and national of Mexico. CAMACHO stated he entered the United States in October 2023 by climbing over the

border fence from Nogales, Mexico. CAMACHO claimed to have paid $10,000 to an unknown smuggler to be smuggled into the United States. CAMACHO said he crossed the border with his cousin (Hector MONZON-Verdugo) and was instructed by an unknown smuggler in Mexico to wait at house in Nogales, Arizona. CAMACHO said after remaining at the house in Nogales, Arizona for a few hours, an unknown person arrived at the house to transport CAMACHO and his cousin, MONZON, to Phoenix, Arizona.

38. CAMACHO said upon arriving in Phoenix, Arizona, the unknown driver dropped off CAMACHO and his cousin, MONZON, at an El Taco Loko business located at 55th and Baseline. CAMACHO said ANGULO provided the location of the El Taco Loko to CAMACHO. CAMACHO said he provided the address to the unknown driver. CAMACHO said he met ANGULO at El Taco Loko located at 55th and Baseline. CAMACHO stated ANUGLO then transported CAMACHO to his residence located near Baseline and 63rd.

39. CAMACHO said ANGULO is an acquaintance and that they are both from the same town of Guasave, Sinaloa, Mexico. CAMACHO stated he was in communication with ANGULO before leaving Guasave for the United States. CAMACHO stated ANGULO told him (CAMACHO) that he (ANGULO) will have a job for him (CAMACHO) if he made it to Phoenix. CAMACHO said he believed ANGULO had knowledge that Camacho was illegally present in the United States.

40. CAMACHO said ANGULO would pay him $15 per hour to work for El Taco Loko. CAMACHO said he was paid weekly which alternated between cash and check. CAMACHO stated the check had the name of the business had CAMACHO's name printed on it. CAMACHO said his weekly payment was between $600 and $700. CAMACHO said he would work a minimum of 40 hours per week. CAMACHO said he was paid by VARGAS-Loya.

41. CAMACHO also stated that he lived at ANGULO's Residence for approximately 3 months when he first entered the United States. CAMACHO said that, in lieu of a rental payment, he would help around the house such as provide food.

CAMACHO said ANGULO offered CAMACHO to temporarily stay at ANGULO's residence so that CAMACHO could save money.

42. At approximately 2328 hours, agents conducted a follow-up interview with CAMACHO which was audio recorded. CAMACHO said he communicated with ANGULO before leaving Guasave for the United States. CAMACHO stated he told ANGULO that he was being charged $10,000 to be smuggled into the United States. CAMACHO claims that ANGULO gave CAMACHO $5,000 to pay part of the smuggling fee.

B. *Jose Daniel VEGA-Anaya (VEGA)*

43. On July 8, 2025, at approximately 2152 hours, agents conducted an audio recorded interview with Jose Daniel VEGA-Anaya (VEGA). VEGA was provided his *Miranda* warnings in the Spanish language. VEGA chose to waive his rights and agreed to speak with agents without an attorney present. Below is a summary of his interview.

44. VEGA stated he illegally entered the United States in 2019 when he crossed the border in Texas. VEGA stated he then made his way to Phoenix.

45. VEGA stated he lived at the 16th Avenue house (where he was arrested) for approximately one year. He stated he worked for ANGULO at Taco Loko for approximately four months but no longer works there, and that he was paid in cash. VEGA stated he paid $10,000 USD to be smuggled into the United States and that he did not pay ANGULO that money. VEGA stated ANGULO had no role in VEGA coming into the United States. VEGA stated he walked past the Taco Loko Restaurant and asked if they were hiring and was ultimately hired. VEGA said he did not know if any of his coworkers were illegally present in the United States because he didn't really talk to other employees. VEGA stated he never lived on ANGULO's property.

46. VEGA stated that all of the individuals living at the 16th Avenue house were employees of Taco Loko. VEGA stated he met his 16th Avenue roommates, including FLORES-Luna, MONZON-Verdugo, CAMACHO-Verdugo, AUDEVES, and a female after he stopped working at Taco Loko. VEGA said he did not know if any employees

were paying ANGULO or if ANGULO had helped them come into the United States. VEGA stated another man, Leobardo, lived at the 16th Avenue house but was not home.

47.     VEGA stated he was paid approximately $13-14 USD per hour when he worked for ANGULO, and that he was paid in cash and sometimes paid by VARGAS-Loya who he knew was ANGULO's wife. VEGA said he was part of a WhatsApp group chat when he worked for ANGULO and that is where they would receive their work schedule. VEGA said sometimes another female would make the schedule sometimes VARGAS-Loya would make the schedule. VEGA stated he did now know if ANGULO was involved in smuggling aliens. VEGA stated AUDEVES was ANGULO's brother.

48.     At approximately 2340 hours, agents conducted a follow-up interview with VEGA which was audio recorded. VEGA stated he was renting the house on 16th Avenue. VEGA stated he was responsible for collecting the money from the other people living there in order to pay the landlord. VEGA stated he was born in Guasabe, Sinaloa, Mexico and that he was a citizen and national of Mexico. VEGA stated he knew ANGULO from his days in Guasabe. VEGA stated that ANGULO paid for him to be crossed over from Mexico into the United States and stated that he needed to pay ANGULO back. VEGA stated that he made an agreement with ANGULO to work for ANGULO in order to pay back money he owed ANGULO for the smuggling fee. VEGA stated that he owed ANGULO $12,000 USD for being smuggled into the United States.

49.     VEGA stated that ANGULO told him (VEGA) that someone would smuggle him (VEGA) from Mexico into the United States. VEGA stated that he crossed through Nogales, Arizona and that he spent one day in Nogales, Arizona. VEGA stated he was then transported by a coyote up to Phoenix.

50.     VEGA stated that ANGULO was in contact with him (VEGA) while being smuggled over and an unknown person to give him (VEGA) instructions. VEGA stated that he arrived in Phoenix in 2021 and worked for ANGULO for about a year or a year and a half to pay ANGULO back for ANGULO paying his (VEGA) smuggling fee. VEGA stated that he lived in a trailer on ANGULO'S property for about a year and a half in order

to pay ANGULO back for the money he owed. VEGA stated that ANGULO picked him because he worked as a cook while living in Guasabe. VEGA stated that when he was given his paycheck, he would then save some money, approximately $500 or $1,000 USD, and then made payments to ANGULO to pay back money he owed. VEGA stated that while living at ANGULO'S property, he would pay $250 USD per month to ANGULO for rent. Then, it went up to $300.

51.     VEGA stated that ANGULO also brought other individuals from Mexico into the United States illegally including Jose, Hector[1], Antonio[2], and Leobardo[3] in the same manner he was brought over and they had to pay $12,000 a person. VEGA confirmed ANGULO was in contact with him while he (VEGA) was being smuggled in and the interstate highway was used to bring him up to Phoenix.

C. *German AUDEVES Quintero (AUDEVES)*

52.     On July 8, 2025, at approximately 2300 hours, agents conducted an audio recorded interview with German AUDEVES Quintero (AUDEVES). AUDEVES was provided his *Miranda* warnings in the Spanish language. AUDEVES chose to waive his rights and agreed to speak with agents without an attorney present. Below is a summary of his interview.

53.     AUDEVES stated he was a citizen and national of Mexico. AUDEVES stated ANGULO is his brother. AUDEVES claimed he entered illegal into the United States in August of 2022 through Nogales, Arizona. AUDEVES stated he paid $10,000 USD to a coyote to be smuggled into the United States. AUDEVES stated he borrowed $5,000.00 from ANGULO and a cousin. AUDEVES stated once he arrived in Phoenix, Arizona he began working for ANGULO at the Taco Loko restaurant. AUDEVES claimed he oversaw all the deliveries of the supplies to the food trucks, in a vehicle provided by the business. AUDEVES would receive between $550 to $650 USD in cash. AUDEVES stated

---

[1] This is the first name of MONZON-Verdugo.
[2] This is the first name of CAMACHO-Verdugo.
[3] This is the first name of CRUZ-Moreno.

he was not paid by the hour, more like a salary. Both ANGULO or VARGAS-Loya would place the cash in envelopes and the managers would distribute the money to the employees. AUDEVES was asked if he knew any of the other people that were arrested. AUDEVES said he knew the majority of them. AUDEVES stated FLORES-Luna was a friend and he asked AUDEVES to bring him to the United States from Mexico. AUDEVES stated ANGULO would ask for people that were hard workers, responsible and with no problems to become employees at Taco Loko. The smuggling fee paid were the same as AUDEVES', between approximately $8,000 to $10,000 USD. AUDEVES stated ANGULO would make all the arrangements for the smuggling and pay the monies to the coyote. The people crossed would in return pay ANGULO back all the money owed. Most of the people were from the same community in Guasave, Sinaloa Mexico. ANGULO was the person in charge of contacting the coyote in Nogales, but the people crossing would also have the coyote's phone number as well.

## **FORFEITURE**

54.     Pursuant to 18 U.S.C. §§ 924(d) and 981, 21 U.S.C. §§ 853 and 881, and 28 U.S.C. § 2461(c), and upon conviction of the offense alleged in Count 1 of this Complaint, the defendants shall forfeit to the United States of America all right, title, and interest in (a) any property constituting, or derived from, any proceeds the persons obtained, directly or indirectly, as the result of the offense, and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense, including, but not limited to the following property involved and used in the offense:

(1) Mossberg .22LR Rifle, Serial Number (S/N): EM13907346,

(2) Colt 1911 Government Model 45 ACP, S/N: FG65072,

(3) Colt Single Action Army 45, S/N: P70363,

(4) approximately 40 rounds of Hornady .223 Rem Ammunition,

(5) approximately 239 rounds of Federal 22LR Ammunition,

(6) approximately 100 rounds of Winchester 45 Auto Ammunition, and

(7) approximately 1 round of Federal 45 Auto Ammunition.

## CONCLUSION

55. Based on the facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that the defendant, BLADEMIR ANGULO AUDEVES violated Title 18, United States Code, Sections 922(g)(5) and 924(a)(8), Alien in Possession of a Firearm, Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (a)(1)(B)(ii), Harboring Illegal Aliens, Title 8, United States Code, Section 1325(a)(l), Improper Entry by Alien, and Title 8, United States Code, Sections 1324a(a)(1), (a)(2) and (f)(1), Pattern and Practice of Knowingly Employing Unauthorized Aliens.

_DANIELLE M MAESE_
Digitally signed by DANIELLE M MAESE
Date: 2025.07.10 16:47:01 -07'00'

Danielle Maese
Special Agent
Homeland Security Investigations

Sworn to before me and subscribed telephonically on this 10th of July, 2025.

_M Morrissey_
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge